# Exhibit 1



# Exhibit 1

Electronically FILED by Superior Court of California, County of Los Angeles on 11/09/2021 11:40 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case 2:22-cv-00613-RGK-MRW   Document 1-1   Filed 01/27/22   Page 2 of 135   Page ID #:5

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.; and
DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SKYAN HOLDINGS LLC; SCOTT YANG; and KELLY YANG

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| 21STCV41213 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Peter J. Schulz, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

SCHULZ BRICK & ROGASKI
600 W. Broadway, Suite 960, San Diego, California 92101
(619) 234-3660

Sherri R. Carter Executive Officer / Clerk of Court

DATE: 11/09/2021
*(Fecha)*

Clerk, by R. Clifton , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

Electronically FILED by Superior Court of California, County of Los Angeles on 11/09/2021 11:40 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case #: 21STCV41213 Assigned for all purposes to: Stanley Mosk Courthouse, Judge Michael P. Linfield 21STCV41213 Filed 01/27/22 Page 3 of 135 Page ID #:6

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Peter J. Schulz, SBN 167646 • Tommy U. Schroeder, SBN 317542
SCHULZ BRICK & ROGASKI
600 W. Broadway, Suite 960, San Diego, California 92101
TELEPHONE NO.: (619) 234-3660 • FAX NO. *(Optional):* (619) 234-0626
E-MAIL ADDRESS: pjs@sbrlawsd.com • ts@sbrlawsd.com
ATTORNEY FOR *(Name):* SKYAN HOLDINGS LLC, SCOTT YANG, KELLY YANG

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: SKYAN HOLDINGS LLC, et al. v. ASSOCIATED INDUSTRIES
INSURANCE COMPANY, INC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)    [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder    Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 21STCV41213 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* 4: Breach of Contract – Duty to Defend; Breach of Implied Covenant of Good Faith
5. This case [ ] is [X] is not a class action suit. and Fair Dealing; Breach of Contract – Duty to Indemnify; Fraud
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 9, 2021

Peter J. Schulz, Esq.
(TYPE OR PRINT NAME)      ►      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California      **CIVIL CASE COVER SHEET**      Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SHORT TITLE: SKYAN HOLDINGS LLC, et al. v. ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: SKYAN HOLDINGS LLC, et al. v. ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1, 2, 3<br>10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case<br>☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: SKYAN HOLDINGS LLC, et al. v. ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: SKYAN HOLDINGS LLC, et al. v. ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☒ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☒ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br><br>2244 Beverly Blvd. |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90057 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: November 9 , 2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Electronically FILED by Superior Court of California, County of Los Angeles on 11/09/2021 11:40 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Kristin Escalante

1 | Peter J. Schulz, Esq. (SBN 167646)
pjs@sbrlawsd.com
2 | Tommy U. Schroeder, Esq. (SBN 317542)
ts@sbrlawsd.com
3 | **SCHULZ BRICK & ROGASKI**
600 West Broadway, Suite 960
4 | San Diego, California 92101
Tel:  (619) 234-3660
5 | Fax:  (619) 234-0626

6 | Attorneys for Plaintiffs SKYAN HOLDINGS LLC,
SCOTT YANG and KELLY YANG

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES**

10 |

11 | SKYAN HOLDINGS LLC;
SCOTT YANG; and
12 | KELLY YANG,

13 |          Plaintiffs,

14 |                    v.

15 | ASSOCIATED INDUSTRIES INSURANCE
COMPANY, INC.; and
16 | DOES 1 through 50, inclusive,

17 |          Defendants.

Case No.:  21STCV41213

**COMPLAINT FOR:**

1. **Breach of Contract;**

2. **Breach of the Implied Covenant of Good Faith and Fair Dealing;**

3. **Breach of Contract; and**

4. **Fraud**

18 |

19 |          COMES NOW Plaintiffs SKYAN HOLDINGS LLC, ("SKYAN"), SCOTT YANG and

20 | KELLY YANG (jointly "YANG"), sometimes jointly referred to as Plaintiffs, allege as follows:

21 |          **ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

22 |          1.        Plaintiff SKYAN is and was at all times relevant a limited liability corporation

23 | organized, existing and in good standing under the laws of the State of California and authorized

24 | to do and doing business in the State of California, County of Los Angeles.  Plaintiffs SCOTT

25 | YANG and KELLY YANG are citizens of the State of California.

26 |          2.        Plaintiffs are informed and believe and thereon allege that Defendant

27 | ASSOCIATED INDUSTRIES INSURANCE COMPANY ("AIIC" or "Defendant") is and was at

28 | all time relevant an insurer existing under the laws of one the States of United States and, in order

1   to issue insurance policies in the State of California, AIIC agreed to subject itself to the

2   jurisdiction of the courts of California. AIIC was also required and agreed to strictly comply with

3   all applicable laws of the State of California, including but not limited to California Insurance

4   Code, Administrative Codes and Regulations in order to transact the business and issue policies of

5   insurance to California limited liability corporations and individuals.

6         3.    The true names and capacities, whether individual, corporation, associate or

7   otherwise of Defendant DOES 1 through 50, inclusive, are presently unknown to Plaintiffs, who

8   therefore sue said Defendants by such fictitious names and will seek leave of the Court to amend

9   this complaint to show the true names and capacities when the same have been ascertained.

10   Defendant DOES 1 through 50, inclusive, were in some manner responsible for injuries and

11   damages complained by Plaintiffs in this complaint.

12         4.    Plaintiffs are informed and believe and thereon allege that Defendants, Does 1

13   through 10 is and were at all time relevant were insurers existing under the laws of one the States

14   of United States and, in order to issue insurance policies in the State of California, agreed to

15   strictly comply with all applicable laws of the State of California, including, but not limited to

16   California Insurance Code, Administrative Codes and Regulations and Civil Codes and the

17   requirements of the California Fair Claims Practices Act in order to issue policies of insurance to

18   California Limited Liability Corporations, individuals, including Plaintiffs Skyan and Yang

19   herein.

20         5.    On or about March 30, 2015 Defendant AIIC issued a policy of general liability

21   insurance to Plaintiff bearing policy number AES1034393 00 ("Policy"). A copy of the AIIC

22   Policy is attached to this Complaint as **Exhibit "A."** At no time have Defendants ever advised

23   Plaintiff that Exhibit "A" is not a true and correct and full copy of the policy of insurance

24   purchased by Plaintiff from Defendants. By accepting premiums from and issuing the Policy to

25   Plaintiff, AIIC agreed to accept its contractual obligation to Plaintiff by providing a defense to any

26   lawsuit or claim alleging potentially covered property damage and thereafter indemnifying

27   Plaintiff as required under the terms of the Policy.

28         6.    Defendants charged and received premium in the form of good and valuable

1  consideration paid by Plaintiff, including but not limited to the payment of premiums and fees in

2  an amount in excess of $15,000.00.  At no time have Defendants demanded additional premium or

3  other payments from Plaintiff or advised Plaintiff that the Policy was invalidated for any reason as

4  a result of Plaintiff's beach of any term, condition, provision, amendment or endorsement of the

5  Policy or that Plaintiff failed to meet any required financial or other policy obligations.

6      7.   Plaintiff alleges that Defendant had no intention of meeting its statutory, regulatory

7  and/or contractual obligations to Plaintiff Skyan and Plaintiff Yang, including but not limited to

8  maintaining sufficient financial assets to respond to claims against its California insureds.

9      8.   Prior to issuing the Policy, Defendant and/or is designated representatives  and

10  assigned surplus lines broker represented to the California Department of Insurance and the

11  general public, such as Skyan and Yang, that it was and is an experienced insurer that had

12  previously issued a significant number of general liability insurance policies businesses located in

13  California such as Skyan and to California citizens such as Plaintiff  Yang.  Plaintiff alleges that

14  Defendant does not have sufficient familiarity with its contractual, regulatory and statutory

15  obligations to  meeting its obligations owed to Plaintiff Skyan and Plaintiff Yang.

16      9.   On or about January 10, 2018 a Civil Code §895 demand ("Claim") regarding the

17  property developed by Plaintiff Skyan, was sent to Plaintiff Skyan and Plaintiff Yang.  A true and

18  correct copy of the Claim is attached to this Complaint as **Exhibit "B."**  The Claim alleged

19  covered property damage that was not otherwise excluded by the Policy.  Plaintiff timely tendered

20  the Claim to AIIC.  AIIC acknowledged the tender on or about February 28, 2018 and advised that

21  it would timely, investigate and substantively respond to the tender of the Claim.

22      10.  Since February 28, 2018 Plaintiff Skyan and Plaintiff Yang sent numerous

23  communications to AIIC advising of the statutorily allowed inspections of the property, the

24  retention of its consultant, the results of the inspections, the damages being claimed, the service of

25  the Underlying Suit and made numerous requests that AIIC provide a substantive response to the

26  tender.

27      11.  On or about July 12, 2018, Meir Raddy and Osher Raddy filed a Complaint with

28  the Superior Court of Los Angeles County and it was assigned case number BC713919

("Underlying Suit").  The Suit sets forth allegations that include and exceed the allegations set forth the Claim.  Skyan and Yang were each named as Defendants in the Underlying Suit.  A true and correct copy of the Suit is attached as **Exhibit "C."**

12.     On August 23, 2018 the Complaint and other documents were sent to the representative of AIIC along with a request that AIIC accept the defense of Plaintiff Skyan and Plaintiff Yang.

13.     On August 23, 2018 Plaintiff Skyan and Plaintiff Yang timely tendered the Underlying Suit to AIIC.

14.     On December 7, 2018, AIIC agreed to defend Plaintiffs against the allegations alleged in the underlying suit pursuant to a reservation of rights.

15.     Notwithstanding its agreement to defend Plaintiffs in the underlying suit, AIIC has failed to properly manage or fund the defense, and has failed to timely communicate material issues affecting the rights and benefits of the Plaintiffs to which they are entitled under the AIIC policy.

16.     On June 25, 2021, counsel for Plaintiffs provided AIIC with a statutory demand for settlement within policy limits that expired on July 16, 2021.  Plaintiffs demanded that AIIC timely agree to respond to the policy limit demand by tendering the full available policy limits available for settlement of all claims.

17.     Having receive no response from AIIC to the request for settlement within policy limits, counsel for Plaintiffs obtained an additional extension through July 30, 2021 to respond to the policy limit offer of settlement and communicated this extension to AIIC on June 30, 2021.  Between June 30, 2021 and August 18, 2021, Plaintiffs' counsel made repeated attempts to reach AIIC's appointed claims handler by phone and through emails without any response or correspondence whatsoever.

18.     On September 5, 2021, counsel for Plaintiffs again attempted to communicate with AIIC without success, causing Plaintiffs to believe that AIIC had abandoned the defense and abandoned its legal duties towards its insured.  As a direct and proximate cause of AIIC's abandonment of its duties and obligations under the policy, Plaintiffs have sustained, and will

1  continue to sustain, economic and non-economic damages in an amount to be proven at the time of

2  trial.

3  **FIRST CAUSE OF ACTION**

4  **Breach of Contract – Duty to Defend**

5  **(Against Defendant AIIC and DOES 1 through 50)**

6  19.  Plaintiff reasserts and alleges Paragraphs 1 through 18 of this Complaint as if fully

7  set forth herein.

8  20.  Plaintiff has performed all conditions covenants and promises required on its part

9  to be performed in accordance with the terms and conditions of the contract.

10  21.  Within four years of the filing of this Complaint, Defendant breached the terms,

11  conditions of the Policy and its contractual obligations by failing to defend Plaintiff in the

12  Underlying Suit.

13  22.  As a result of Defendant's breach of the Agreement, Plaintiff has been damaged.

14  The exact amount of Plaintiff's damages is currently unknown; for which leave of Court will be

15  requested to amend the Complaint when such amount becomes known.

16  **SECOND CAUSE OF ACTION**

17  **Breach of the Implied Covenant of Good Faith and Fair Dealing**

18  **(Against AIIC and DOES 1 through 50)**

19  23.  Plaintiff reasserts and alleges Paragraphs 1 through 22 of this Complaint as if fully

20  set forth herein.

21  24.  Plaintiff alleges Knowingly committing or performing with such frequency as to

22  indicate a general business practice any of the following unfair claims settlement practices:

23    •  Misrepresenting to claimants and the insured pertinent facts or insurance

24       policy provisions relating to any coverages at issue.

25    •  Failing to acknowledge and act reasonably promptly upon communications

26       with respect to claims arising under insurance policies.

27    •  Failing to adopt and implement reasonable standards for the prompt

28       investigation and processing of claims arising under insurance policies.

- Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
- Failing to mount and fund a defense.
- Compelling insureds to institute litigation to recover amounts due under an insurance policy.
- Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

25.     Plaintiff alleges that the aforementioned acts of Defendants constituted an unfair dealing.

26.     Plaintiff alleges that the aforementioned acts of Defendant were done consciously and deliberately.

27.     Plaintiff alleges that the aforementioned acts of Defendant deprived Plaintiff from benefits to which it were entitled under the Policy.

28.     Plaintiff alleges that the aforementioned acts of Defendant frustrated the common purpose of the Agreement and Renewals and disappointed the reasonable expectations of Plaintiff to the Agreement and Renewals.

29.     The allegations herein support a finding that Defendants' conduct was done with oppression, fraud and malice within the meaning of Civil Code §3294, and based thereon, Plaintiff alleges that it is entitled to recoup punitive and exemplary damages for said willful, intentional, wanton, evil, reckless conduct or conduct that was done with a vexatious intent to injure.

30.     As a result of Defendant's breach of the Agreement, Plaintiff has been damaged. The exact amount of Plaintiff's damages is currently unknown; for which leave of Court will be requested to amend the Complaint when such amount becomes known.

## THIRD CAUSE OF ACTION

### Breach of Contract – Duty to Indemnify

### (Against Defendant AIIC and DOES 1 through 50)

31.     Plaintiff reasserts and alleges Paragraphs 1 through 30 of this Complaint as if fully

1   set forth herein.

2       32.    Plaintiff has performed all conditions covenants and promises required on its part

3   to be performed in accordance with the terms and conditions of the contract.

4       33.    Within four years of the filing of this Complaint, Plaintiff requested that Defendant

5   perform its obligations under The Policy by failing to accept a settlement demand with in the

6   applicable limits of The Policy made by the Plaintiffs in the Underlying Suit.

7       34.    As a result of Defendant's breach of the Agreement, Plaintiff has been damaged.

8   The exact amount of Plaintiff's damages is currently unknown; for which leave of Court will be

9   requested to amend the Complaint when such amount becomes known.

10   **FOURTH CAUSE OF ACTION**

11   **Fraud**

12   **(Against Defendant AIIC and DOES 1 through 50)**

13       35.    Plaintiff reasserts and alleges Paragraphs 1 through 34 of this Complaint as if fully

14   set forth herein.

15       36.    Plaintiff has performed all conditions covenants and promises required on its part

16   to be performed in accordance with the terms and conditions of the contract.

17       37.    Within four years of the filing of this Complaint, Plaintiff requested that Defendant

18   perform its obligations under The Policy by failing to fund the defense and/or accept a settlement

19   demand with in the applicable limits of The Policy made by the Plaintiffs in the Underlying Suit.

20       38.    As a result of Defendant's breach of the Agreement, Plaintiff has been damaged.

21   The exact amount of Plaintiff's damages is currently unknown; for which leave of Court will be

22   requested to amend the Complaint when such amount becomes known.

23       **WHEREFORE**, Plaintiff prays judgment against Defendants and each of them as follows:

24   **FIRST AND SECOND CAUSES OF ACTION**

25       1.    For a judicial declaration of rights, remedies, and obligations;

26       2.    For reasonable Attorneys' fees and costs as provided in <u>Brandt v. Superior Court</u>

27   (1985) 37 Cal. 3d 813; and

28       3.    For such other and further relief as the Court may deem just and proper.

## THIRD AND FIFTH CAUSES OF ACTION

1.      For compensatory and general damages in an amount according to proof.

2.      For interest on said sum from and after the date of the breach of the contract.

3.      For reasonable Attorneys' fees and costs as provided in <u>Brandt v. Superior Court</u> (1985) 37 Cal. 3d 813.

4.      For costs of suit; and

5.      For such other and further relief as the Court may deem appropriate.

## FOURTH CAUSE OF ACTION

1.      Actual damages in the form of defense fees, costs and expenses incurred and for the additional fees incurred by Plaintiff above that which should have been paid by Defendant.

2.      For reasonable Attorneys' fees and costs as provided in <u>Brandt v. Superior Court</u> (1985) 37 Cal. 3d 813.

3.      For punitive and exemplary damages.

4.      For costs of suit; and

5.      For such other and further relief as the Court may deem necessary.

## FIFTH CAUSE OF ACTION

1.      Actual damages in the form of defense fees, costs and expenses incurred and for the additional fees incurred by Plaintiff above that which should have been paid by Defendant.

2.      For reasonable Attorneys' fees and costs as provided in <u>Brandt v. Superior Court</u> (1985) 37 Cal. 3d 813.

3.      For punitive and exemplary damages.

4.      For costs of suit; and

5.      For such other and further relief as the Court may deem necessary.

Dated: November 5, 2021

SCHULZ BRICK & ROGASKI

By: _____
Peter J. Schulz, Esq.
Tommy U. Schroeder, Esq.
Attorneys for Plaintiffs SKYAN HOLDINGS
LLC, SCOTT YANG and KELLY YANG

-8-

COMPLAINT

**EXHIBIT "A"**

# COMMERCIAL LINES POLICY

# Associated Industries Insurance Company, Inc.

## Associated Industries Insurance Company, Inc.

P.O. Box 318004
Cleveland, OH 44131-0880

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- COVERAGE FORMS
  APPLICABLE ENDORSEMENTS

AES JACKET 08 11

Associated Industries Insurance Company, Inc.

In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

President

*Lisa MPacheco*

Elissa Pacheco

AES JACKET 08 11

# Privacy Policy
## Associated Industries Insurance Company, Inc.

We value your business and trust in us and respect the privacy and confidentiality of your nonpublic personal information.

**Our Practices Regarding Privacy and Confidentiality**

We are committed to keeping your information secure and confidential, regardless of whether information is received by mail, telephone, Internet or in person.

The nonpublic personal information about you that is collected is utilized only to the extent necessary to effect, deliver, administer or enforce insurance service to you and is disclosed only as permitted by law.  We may also disclose certain information to nonaffiliated third parties.

If you prefer that we not disclose nonpublic personal information about you to third parties, you may opt out of those disclosures, that is, you may direct us not to make those disclosures by contacting us at the address and phone number listed below.

Likewise, to the extent we utilize other organizations, such as general agents and third party administrators, to support our business; we require them to abide by the requirements of the applicable privacy laws and by our privacy policy.

**Information We Collect**

We gather information about you in connection with providing our products and services to you and to support our business operations.  This includes information you may provide to us, such as from your insurance application, and information about you from another source, such as a credit bureau.

**Information We May Disclose To Affiliates or Third Parties**

Except as noted herein, we do not disclose nonpublic personal information unless authorized by you.  We may, without authorization but only as permitted or required by law, provide nonpublic personal information about you to persons or organizations both inside and outside of Associated Industries Insurance Company, Inc. in order to fulfill a transaction requested, service policies, investigate and/or handle claims, detect and/or prevent fraud, participate in insurance support organizations, or comply with lawful requests from regulatory or law enforcement authorities or a court of law. These include, for example: affiliated companies, claims adjusters or administrators, insurance agents or brokers, medical providers, program managers, consumer reporting agencies, governmental agencies, auditors, lienholders, mortgagees, and assignees.

**Information Confidentiality and Security**

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Access to Your Information**

You have the right to know what kind of information we keep in our files about you, to have the reasonable access to it and receive a copy. Contact us at the address noted below should you have questions about what information we may have on file.  All written requests must include your name, address, telephone number, and a photocopy of a picture ID for identification purposes.  We are dedicated to maintaining accurate customer records and shall strive to correct any inaccurate information noted in a timely manner.

**Associated Industries Insurance Company, Inc.**
Associated Industries Insurance Company, Inc.
P.O. Box 318004
Cleveland, OH 44131-0880
Attention: Privacy Manager

AES PN 08 11



Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1034393 00

**Named Insured:**
Skyan Holdings LLC

## COMMON POLICY DECLARATIONS

| Policy Number | AES1034393 00 | Policy Period: | From | 3/30/2015 | To | 3/30/2016 |
|---|---|---|---|---|---|---|

12:01 a.m. Standard Time at the Named Insured's Address

**Transaction**    New Business

| Named Insured and Address | Broker |
|---|---|
| Skyan Holdings LLC | R-T Specialty of California Insurance Services, LL |
| 2244 Beverly Hills Blvd | 7979 Ivanhoe Avenue, Suite 325 |
| Los Angeles CA 90057 | La Jolla CA 92037 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Single family home builders | Limited Liability Company | Annual |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| COVERAGE PART DESCRIPTION | PREMIUM |
|---|---|
| General Liability | $15,000.00 |

| | | |
|---|---|---|
| POLICY PREMIUM | $ | 15,000.00 |
| DEPOSIT PREMIUM | $ | 15,000.00 |
| TERRORISM COVERAGE | $ | Excluded |
| POLICY FEE | $ | 225.00 |
| TOTAL DEPOSIT PREMIUM | $ | 15,225.00 |

**Minimum Retained Audit Premium**  $ 15,000.00      **Minimum Retained Premium**  $ 3,750.00

| Forms applicable to all Coverage Parts: | See Forms and Endorsements schedule |
|---|---|

| Premium: | $15,225.00 |
|---|---|
| Includes: | $225.00 Policy Fee |
| CA State Tax: | $456.75 (3.0%) |
| CA Stamping Fee: | $30.45 (.20%) |
| Total: | $15,712.20 |

Countersigned this _____   By _____ _Lisa M Palma_

Authorized Representative

Issued Date:      4/8/2015

INSURED COPY

CPPMDEC 0411



Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1034393 00
**Named Insured:**
Skyan Holdings LLC

## GENERAL LIABILITY
## COVERAGE PART

| Policy Number | AES1034393 00 | Policy Period: | From | 3/30/2015 | To | 3/30/2016 |
|---|---|---|---|---|---|---|

12:01 a.m. Standard Time at the Named Insured's Address

| Transaction | New Business |
|---|---|

| Named Insured and Address | Broker |
|---|---|
| Skyan Holdings LLC | R-T Specialty of California Insurance Services, LL |
| 2244 Beverly Hills Blvd | 7979 Ivanhoe Avenue, Suite 325 |
| Los Angeles CA 90057 | La Jolla CA 92037 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Single family home builders | Limited Liability Company | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Medical Expense Limit, any one person | $ Excluded |
| Fire Damage Limit, any one fire | $ 100,000 |

### AMENDED LIMITS OF LIABILITY
Refer to attached schedule, if any.

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY
Refer to attached schedule.

### CLASSIFICATIONS
Refer to attached schedule, if any.

**TOTAL PREMIUM FOR THIS COVERAGE PART**      $                **15,000.00**

| Forms and Endorsements Applicable |
|---|
| See Forms and Endorsements Schedule |

These Declarations together with the common policy conditions, coverage declarations, coverage form(s), and form(s) and endorsements, if any, issued, complete the above number policy.

Issued Date:      4/8/2015

INSURED COPY

GLM330000 0411

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

Policy Number:
AES1034393 00
Named Insured:
Skyan Holdings LLC

## COMMERCIAL GENERAL LIABILITY EXTENSION OF DECLARATIONS

**LOCATION OF PREMISES**

**Location of All Premises You Own, Rent or Occupy:**

1
936 S Burnside
Los Angeles CA 90036

**PREMIUM**

| Location | Classification | Code No. | Exposure | Basis | Rate Prem. Ops. | Prod/Comp Ops. | Advance Premium Prem. Ops. | Prod/Comp Ops. |
|---|---|---|---|---|---|---|---|---|
| 1 | | 91580 | Included | Included | Included | Included | Included | Included |
| | Contractors - executive supervisors or  executive superintendents | | | | | | | |
| 1 | | 91585 | 2,600,000 | Gross Sales | 5.769 | Included | $15,000 | Included |
| | Contractors - subcontracted work - in  connection with construction,  reconstruction, repair or erection of  buildings - Not Otherwise Classified | | | | | | | |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  Copyright, Insurance Services Office, Inc., 1994.

Issued Date:        4/8/2015

Page 3 of 5

INSURED COPY

GLMDECB 0411

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

Policy Number:
  AES1034393 00
Named Insured:
  Skyan Holdings LLC

## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|---|---|---|---|
| CG | AESPN | (08/11) | ASSOCIATED INDUSTRIES INSURANCE COMPANY PRIVACY POLICY |
| CG | CANOTICE | (08/09) | CA NOTICE |
| CG | CG0001 | (12/07) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG | CG2134 | (01/87) | EXCLUSION - DESIGNATED WORK |
| CG | CG2135 | (10/01) | EXCLUSION - COVERAGE C - MEDICAL PAYMENTS |
| CG | CG2136 | (03/05) | EXCLUSION - NEW ENTITIES |
| CG | CG2147 | (12/07) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG | CG2149 | (09/99) | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG | CG2153 | (01/96) | EXCLUSION – DESIGNATED ONGOING OPERATIONS |
| CG | CG2154 | (01/96) | EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM |
| CG | CG2167 | (12/04) | FUNGI OR BACTERIA EXCLUSION |
| CG | CG2175AES | (01/13) | EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES |
| CG | CG2186 | (12/04) | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG | CG2196 | (03/05) | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG | CG2234 | (07/98) | EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS |
| CG | CG2243 | (07/98) | EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY |
| CG | CG2279 | (07/98) | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG | IL0003 | (09/08) | CALCULATION OF PREMIUM |
| CG | IL0017 | (11/98) | COMMON POLICY CONDITIONS |
| CG | IL0021 | (09/08) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| CG | NXGL004 | (08/09) | AMENDMENT - COMMON POLICY CONDITIONS |
| CG | NXGL005 | (11/10) | POLICYHOLDER'S GUIDE TO REPORTING A CASUALTY CLAIM |
| CG | NXGL006 | (08/09) | INTERIM PREMIUM AUDIT CONDITION |
| CG | NXGL007 | (08/09) | MINIMUM RETAINED AUDIT PREMIUM |
| CG | NXGL008 | (08/09) | MINIMUM RETAINED PREMIUM |

CPPMFORMSCHED

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1034393 00
**Named Insured:**
Skyan Holdings LLC

## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|---|---|---|---|
| CG | NXGL014 | (08/09) | TEMPORARY & VOLUNTEER WORKER EXCLUSION |
| CG | NXGL015 | (08/09) | EXCLUSION – ASBESTOS |
| CG | NXGL016 | (08/09) | EXCLUSION – TOTAL LEAD |
| CG | NXGL018 | (08/09) | EXCLUSION – CROSS SUITS |
| CG | NXGL021 | (08/09) | EXCLUSION - PUNITIVE DAMAGES |
| CG | NXGL023 | (08/09) | POLICY PERIOD AMENDED PRODUCTS/COMPLETED OPERATIONS LIABILITY |
| CG | NXGL037 | (08/09) | DEDUCTIBLE LIABILITY ENDORSEMENT – INCLUDING EXPENSE (PER OCCURRENCE/OFFENSE) |
| CG | NXGL053 | (01/12) | EXCLUSION – CONTINUOUS, PROGRESSIVE OR REPEATED OFFENSES COMMERCIAL GENERAL LIABILITY COVERAGE PART |
| CG | NXGL067 | (08/09) | EXCLUSION – BLASTING OPERATIONS |
| CG | NXGL080 | (08/09) | EXCLUSION – RESIDENTIAL CONVERSION |
| CG | NXGL089 | (08/09) | EXCLUSION – SUBSIDENCE |
| CG | NXGL097 | (08/09) | DEFINITION OF GROSS RECEIPTS/SALES ENDORSEMENT |
| CG | NXGL114 | (08/09) | NON-DUPLICATION OF LIMITS OF INSURANCE |
| CG | NXGL128 | (01/10) | SUBCONTRACTOR SPECIAL CONDITIONS INCLUDING DEDUCTIBLE |
| CG | NXGL129 | (01/10) | TAINTED DRYWALL MATERIAL EXCLUSION |

CPPMFORMSCHED

# POLICYHOLDER NOTICE – SERVICE OF PROCESS

Service of process for any suit instituted against Associated Industries Insurance Company concerning this Policy may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his/her successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder and arising out of this Policy.

Associated Industries Insurance Company has designated:

Mr. Stephen Ungar, Secretary
Associated Industries Insurance Company
59 Maiden Lane, 6th Floor
New York, NY 10038

as the person(s)/organization to whom the Superintendent, Commissioner, or Director of Insurance or other specified person is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this Policy arises.

Associated Industries Insurance Company

## AmTrust E&S Insurance Services Inc.

### <u>COVERAGE QUOTE</u>

**Page 1 of 2**

**Insured:** Skyan Holdings LLC
**Effective Date**: 3/30/2015

## NOTICE:

1. THE INSURANCE POLICY THAT YOU ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: www.insurance.ca.gov.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE

CA Notice 0809

BOUND IMMEDIATELY, EITHER BECAUSE EXISTING
COVERAGE WAS GOING TO LAPSE WITHIN TWO
BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED
TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS,
AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM
AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER
COVERAGE BECAME EFFECTIVE, YOU HAVE THE
RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS
OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL
COVERAGE, THE PREMIUM WILL BE PRORATED AND
ANY BROKER'S FEE CHARGED FOR THIS INSURANCE
WILL BE RETURNED TO YOU.


**Date:** _____


**Insured:** _____

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© ISO Properties, Inc., 2006

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

© ISO Properties, Inc., 2006

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

© ISO Properties, Inc., 2006

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

© ISO Properties, Inc., 2006

☐

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

 © ISO Properties, Inc., 2006

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   **a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

   **b. Excess Insurance**

      **(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

  **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

  **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

  **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

  **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

  **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

  **c. Method Of Sharing**

  If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

  By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

  Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

© ISO Properties, Inc., 2006

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

© ISO Properties, Inc., 2006

☐

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an arrangement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

 © ISO Properties, Inc., 2006   □

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

POLICY NUMBER: AES1034393 00                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

All work conducted in the states of Colorado and New York

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

POLICY NUMBER:AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| **Description And Location Of Premises Or Classification:** |
|---|
| All locations and operations |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc., 2000

**COMMERCIAL GENERAL LIABILITY**
**CG 21 36 03 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II – Who Is An Insured** does not apply.

© ISO Properties, Inc., 2004

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc.,  1998

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 53 01 96**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

All work conducted in the states of Colorado and New York

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in  the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

   Copyright, Insurance Services Office, Inc., 1994     □

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 54 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

**All operations at locations at which the insured was at any time:**
**1. Covered, offered Coverage, or denied coverage; or**
**2. Enrolled, offered enrollment, or not allowed to enroll under a wrap-up program**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

POLICY NUMBER:  AES1034393 00

CONTRACTORS POLLUTION LEGAL LIABILITY

CG 21 75 AES 01 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONTRACTORS POLLUTION LEGAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism"  that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the policy territory. However, with respect to an "other act of terrorism" this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

CG 21 75 AES 01 13

Page 1 of 2

**Includes copyrighted material of Insurance Services Office, Inc. With its Permission**

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "clean up costs", "mold clean up costs", or "crisis management expense" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

   (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

   (b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

CG 21 75 AES 01 13

**Includes copyrighted material of Insurance Services Office, Inc. With its Permission**

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

  "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

   **2. Exclusions**

     This insurance does not apply to:

     **Silica Or Silica-Related Dust**

     **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

     **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

     **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

   **2. Exclusions**

     This insurance does not apply to:

     **Silica Or Silica-Related Dust**

     **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

     **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

**CG 22 34 07 98**          Copyright, Insurance Services Office, Inc., 1997          **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc., 1997

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was comput-
ed based on rates in effect at the time the policy was
issued. On each renewal, continuation, or anniversary
of the effective date of this policy, we will compute the
premium in accordance with our rates and rules then
in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: AES1034393 00

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 004 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT - COMMON POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

## COMMON POLICY CONDITIONS

The following is added:

### G.  Other Insurance With This Company

If this policy contains two or more Coverage Parts providing coverage for the same "occurrence," "injury," or offense, the maximum Limit of Insurance under all Coverage Parts shall not exceed the highest Limit of Insurance under any one Coverage Part.

If this policy and any other policy issued to you by us apply to the same "occurrence," "injury," or offense, the maximum Limit of Insurance under all of the policies shall not exceed the highest Limit of Insurance under any one policy.  This condition does not apply to any policy issued by us which specifically provides that the policy is to apply as excess insurance over this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

COMMERCIAL GENERAL LIABILITY
NX GL 005 11 10

# POLICYHOLDER'S GUIDE TO REPORTING A CASUALTY CLAIM

A. As soon as you are aware of an event that will give rise to a claim being made against you (3rd Party Liability Claims), please be sure to quickly report the matter to AmTrust North America. Be sure to include your policy number and the name of the insured as it is stated on the policy.

B. New claims can be reported to **AmTrust North America** as follows:

     **a. By Mail:**        AmTrust North America
                           P.O. Box 650767
                           Dallas, TX 75265-0767

     **b. By Fax:**          (877) 669-9140

     **c. By Electronic Mail:**     ubiclaimsreporting@amtrustgroup.com

     **d. By Telephone:**       (866) 272-9267

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 006 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INTERIM PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to paragraph **5.** of **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**5. Premium Audit**

**d.** We reserve the right to conduct a complete audit of your records during the policy term to determine the adequacy of the Advance Premium deposit.  If the earned premium computed for the interim audit period exceeds the pro rated Advance Premium by an amount of 10% or more we shall reserve the right to amend the premium base(s) stated in the Declarations to reflect the data produced by the interim audit and to revise the Advance Premium accordingly.  Any additional premium will be due and payable upon notice to the first named Insured.  This provision shall not serve to amend the Minimum Premium as shown in the Declarations or our right to conduct further audits as per paragraph **b.** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00                    **COMMERCIAL GENERAL LIABILITY**
                                                        **NX GL 007 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED AUDIT PREMIUM

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Paragraph **5.b.** of **SECTION IV, COMMERCIAL GENERAL LIABILITY CONDITIONS**, is replaced by the following:

**5.  Premium Audit**

    **b.**  Premium shown in this Coverage Part as Advance Premium is a deposit premium only.  At the close of each audit period, we will compute the earned premium for that period.  Audit premiums are due and payable upon notice to the First Named Insured.  Premium Audit adjustments will be made to determine additional premiums only.  You agree that there will be no downward adjustment of the Minimum Retained Audit Premium resulting from the Premium Audit provision of this policy.

NX GL 007 08 09                                                             Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 008 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

## COMMON POLICY CONDITIONS

Paragraph **5.** of **A. Cancellation** is replaced by the following:

**5.**  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, earned premium will be computed according to the customary short rate table and procedure, subject to a Minimum Retained Premium of $3,750.  The cancellation will be effective even if we have not made or offered a refund.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00                       **COMMERCIAL GENERAL LIABILITY**
                                                             **NX GL 014 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TEMPORARY & VOLUNTEER WORKER EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **5.** of **SECTION V - DEFINITIONS** is replaced by the following:

**5.** "Employee" includes a "leased worker," "temporary worker" or "volunteer worker."

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY
NX GL 015 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Asbestos**

**(1)** "Bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, at any time arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**(2)** Any obligation of the "insured" to indemnify any party because of damages arising out of "bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**(3)** Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, resulting from or contributed to, by the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00                    **COMMERCIAL GENERAL LIABILITY**
                                                                **NX GL 016 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – TOTAL LEAD

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury," "property damage," or "personal and advertising injury," arising out of, resulting from, caused by or contributed to by the presence, ingestion, inhalation, or absorption of or exposure to lead, lead compounds, or lead contained in any materials;

**(2)** Any cost or expense to abate, mitigate, remove, or dispose of lead, lead compounds or materials containing lead;

**(3)** Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with parts **(1)** or **(2)** above; or

**(4)** Any obligation to share damages with or repay anyone else who must pay damages in connection with parts **(1), (2)** or **(3)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 018 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CROSS SUITS
# (NAMED INSUREDS)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Suits between Named Insureds:**

Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury" resulting from, relating to, alleged by or brought between one Named Insured against another Named Insured under this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00                          **COMMERCIAL GENERAL LIABILITY**
                                                      **NX GL 021 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION — PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### LIQUOR LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2 Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** and to SECTION I – LIQUOR LIABILITY COVERAGE paragraph **2. Exclusions:**

2. **Exclusions**

   This insurance does not apply to:

   **Punitive Damages**

   Any claim of or indemnification for punitive or exemplary damages.  If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action.  We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 023 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY PERIOD AMENDED
# PRODUCTS/COMPLETED OPERATIONS LIABILITY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Only with respect to the "products-completed operations hazard" the policy period is extended past the expiration date shown in the declarations.

The policy period for "products-completed operations hazard" ends at the earlier of:

**(a)** The expiration of the statute of repose applicable to claims alleging defective residential construction with respect to such single family dwelling, townhouse or condominium, or

**(b)** 10 years after the date the Designated Project or any part thereof has been put to its intended use or is occupied in whole or in part by any person or organization other than another contractor or subcontractor working on the same project.

With respect to "common areas" at the Designated Project, the policy period for "products-completed operations hazard" ends at the earlier of:

**(a)** the expiration of the statute of repose applicable to claims alleging defective residential construction with respect to "common area", or

**(b)** 10 years after the date of conveyance of the "common area" from the insured to the original "owners association" for the Designated Project .

Unless otherwise defined in any applicable "owners association" covenants, declarations or bylaws, in which case that definition will apply for purposes of this endorsement, "common area" is defined as any portion of the Designated Project other than the individual residential units.

**B.** The following are added to **SECTION III – LIMITS OF LIABILITY**:

The Products-Completed Operations Aggregate Limit stated in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" occurring within the entire policy period, inclusive of the extension period.

The Products-Completed Operations Aggregate limit stated in the Declarations does not apply separately to any annual period that is part of this extended policy period.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**COMMERCIAL GENERAL LIABILITY**
**NX GL 023 08 09**

**C.** The following are added to **SECTION V – DEFINITIONS**:

"Common Areas" means:

That portion of the premises which is not owned solely by the unit owner, developer or out of that person's membership or the developer's membership in the association.

"Owners association" means
any non-profit corporation or unincorporated association created for the purpose, whether in whole or in part, of managing the "common area" at the Designated Project.

**NX GL 023 08 09**
Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00          **COMMERCIAL GENERAL LIABILITY**
**NX GL 037 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY ENDORSEMENT – INCLUDING EXPENSE (PER OCCURRENCE/OFFENSE)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

| SCHEDULE | | | | |
|---|---|---|---|---|
| **Coverage** | | | **Amount of Deductible** | |
| Bodily Injury Liability | OR | $ 2500 | per occurrence | |
| Property Damage Liability | OR | $ 2500 | per occurrence | |
| Personal and Advertising Injury Liability | | $ 2500 | per offense | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage", and "personal and advertising injury," however caused):

**A.**     Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible.  Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

**B.**     The deductible amounts apply to damages and all legal and loss adjustment expenses.

**C.**     The deductible amount stated in the Schedule above is on a per "occurrence" or offense basis and applies as follows:

     **1.**    Under the Bodily Injury Liability Coverage to all damages because of "bodily injury";

     **2.**    Under Property Damage Liability Coverage to all damages because of "property damage";

     **3.**    Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages

Includes copyrighted material of Insurance Services Office, Inc., with its permission

COMMERCIAL GENERAL LIABILITY
NX GL 037 08 09

because of:

    **a.**  "bodily injury";
    **b.**  "property damage"; or
    **c.**  'bodily injury" and "property damage" combined;

**4.**  Under Personal and Advertising Injury Liability Coverages to all damages because of "personal and advertising injury"

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

**D.**  The terms of this insurance, including those with respect to our right and duty to defend the insured against any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply irrespective of the application of the deductible amount.

**E.**  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

NX GL 037 08 09
Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER:    AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 053 01 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTINUOUS, PROGRESSIVE OR REPEATED OFFENSES

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2 Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2.  Exclusions**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" including continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury"

**Continuous, Progressive or Repeated Offenses:**

**(1)** that first occurs, in whole or in part, prior to the effective date of this policy;

**(2)** first occurs, in whole or in part, prior to the effective date of this policy and also occurs during the policy period;

**(3)** first occurs, in whole or in part, prior to the effective date of this policy, also occurs during the policy period, and ceases to occur after the expiration or cancellation date of this policy;

**(4)** first occurs, in whole or in part, after the expiration or cancellation date of this policy; or

**(5)** is alleged in a "suit" against any Insured where the filing date of the original complaint or other pleading initiating that "suit" is a date preceding the effective date of this policy, regardless of whether any Insured was named as a party to, or was served with process regarding, that "suit" prior to the effective date of this policy.

The exclusions stated in Paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** apply regardless of whether the "bodily injury", "property damage", or "personal and advertising injury" was or is known or unknown by any Insured.

For purposes of the exclusions stated in Paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)**, in the event of continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence" and shall be deemed to occur at the time the "bodily injury", "property damage" or "personal and advertising injury" first begins.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00                                    **COMMERCIAL GENERAL LIABILITY**
**NX GL 067 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – BLASTING OPERATIONS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Blasting Operations**

"Bodily injury," "property damage," or "personal and advertising injury" arising from "blasting operations" performed by you or by others on your behalf.

**B.** The following is added to **SECTION V – DEFINITIONS:**

"Blasting operations" means the use, storage and transport of explosives for demolition, construction, or earth and rock movement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 080 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – RESIDENTIAL CONVERSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Residential Conversion**

"Bodily injury," "property damage," or "personal and advertising injury" from the construction of any building, in whole or in part, which has been converted to a non-commercial dwelling or residence, at any time after the inception date of this insurance policy.

As used in this exclusion, non-commercial dwellings or residences includes, but are not limited to, homes, cooperatives, town homes, lofts and condominiums.

This exclusion does not apply to the construction, management, or ownership of apartment buildings, hotels or motels by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY
NX GL 089 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – SUBSIDENCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES, paragraph 2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2.  Exclusions**

This policy does not apply to:

**Subsidence**

"Bodily injury," "property damage," or "personal and advertising injury," including but not limited to disease or illness, including death, loss of, damage to, or loss of property, directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking, or expansion of foundations, walls, roofs, floors, ceilings, or any other movements of land or earth, regardless of whether the foregoing emanates from, or is attributable to, any operations performed by or on behalf of any insured. The foregoing applies regardless of whether the first manifestation of same occurs during the policy period or prior or subsequent thereto.

There is no coverage nor defense under this policy for any claims, loss, costs, or expense arising from allegations against you resulting from or contributing to or aggravated by subsidence as described above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 097 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF GROSS RECEIPTS/SALES ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION V - DEFINITIONS**:

**Gross Sales/Receipts**

The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's name for:

    **a.**  All goods or products sold or distributed:

    **b.**  Operations performed during the policy period; and

    **c.**  Rentals

    **d.**  Dues or fees

The following items shall be deducted when computing gross sales:

    **a.**  Sales or excise taxes which are collected and submitted to a governmental division;

    **b.**  Credits for repossessed merchandise and products returned;

    **c.**  Allowance for damaged and spoiled goods;

    **d.**  Finance charges for items sold on installments;

    **e.**  Freight charges on sales if freight is charged as a separate item on customers invoice; and

    **f.**  Royalty income from patent rights or copyrights, which are not product sales.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 114 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-DUPLICATION OF LIMITS OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

The following is added to **SECTION III – LIMITS OF INSURANCE**:

**8.** Regardless of the number of insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits":

    **a.** With respect to all "bodily injury" and "property damage" that arises out of one "occurrence" and is covered, in whole or in part, by this policy and any other policy issued by us or any affiliate to you, the maximum that we will pay under all such policies combined is the highest Each Occurrence Limit of Insurance stated in the Limits of Insurance section of the Declarations page in any one of these policies.

    In the event of continuous, progressive or repeated "bodily injury" or "property damage" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence."

    **b.** With respect to all "personal and advertising injury" that arises out of the commission of an offense covered by this policy and any other policy issued by us or any affiliate to you, the maximum that we will pay under all such policies combined is the highest Personal and Advertising Injury Limit of Insurance stated in the Limits of Insurance section of the Declarations page in any one of these policies.

    In the event of continuous, progressive, or repeated "personal and advertising injury" over any length of time, such "personal and advertising injury" shall be deemed to be one offense.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER:   AES1034393 00                    **COMMERCIAL GENERAL LIABILITY**
                                                            **NX GL 128 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUBCONTRACTOR SPECIAL CONDITIONS INCLUDING DEDUCTIBLE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Subcontractor Special Conditions**

1.  Certificates of Insurance with Limits of Liability equal to or greater than the Limits of Insurance provided by this policy (underwritten by an insurance company with at least an "A-7" Best rating as defined by AM Best) will be obtained from all "subcontractors" prior to commencement of any work preformed for you.  (Note:  If this policy provides a per location or per project aggregate, "subcontractors" policy must also provide the same.)

2.  You will obtain written hold harmless agreements from "subcontractors" indemnifying you and the owner against all losses for work performed for you by any and all subcontractors.

3.  You will be named as an Additional Insured on all "subcontractors" General Liability policies.

Evidence of compliance must be provided to us during annual premium audit.  Failure to comply with the above conditions will result in additional premium charged against contract costs for jobs not in compliance. **Your failure to comply with the conditions listed above will not invalidate this insurance or alter our obligation to you under the terms of this policy except:**

1.  Additional premium will be changed at a rate of <u>$50.00</u> per $1,000 of contract cost

2.  If any of the above conditions are not satisfied, a deductible <u>of $15,000</u> per claim will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and/or "personal and advertising injury" arising out of the work performed by the "subcontractor" for the insured. The deductible amounts apply to damages and all legal and loss adjustment expenses. Provisions for the application of deductibles under this policy are set forth in the DEDUCTIBLE LIABILITY ENDORSEMENT.

Commercial General Liability Coverage maintained by the "subcontractors" shall be primary and this policy shall be excess of Limits of Liability of such insurance, notwithstanding the language of the Other Insurance provisions of this policy.

B.      The following is added to **Section V - DEFINITIONS**

"Subcontractor" or "subcontractors" means any person or entity who is not an employee of an insured and does work or performs services for or on behalf of an insured.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

**NX GL 128 01 10**                                                      **Page 1 of 1**
             Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: AES1034393 00

**COMMERCIAL GENERAL LIABILITY**
**NX GL 129 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TAINTED DRYWALL MATERIAL EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to:

(1) Any liability, loss, injury or damages or any kind, including but not limited to "bodily injury," "property damage," "personal and advertising injury," "reduction in value," costs or expenses, actually or allegedly arising out of, related to, resulting from, caused by, contributed to, or in any other way connected with the actual or alleged manufacture, creation, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, release, abatement, replacement of, handling of, exposure to, ingestion of, testing for or failure to test for, or failure to warn, advise of or disclose the presence of "tainted drywall material," whether or not the "tainted drywall material" is or was at any time and in any form airborne, contained in a product or a component part of a product, carried on clothing or other items, inhaled, ingested, absorbed, transmitted in any fashion or found in any form whatsoever.

(2) Any liability, loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

    (a) Clean up or removal of "tainted drywall material" or products and materials containing "tainted drywall material";

    (b) Actions necessary to monitor, assess or evaluate the actual, alleged or threatened release of "tainted drywall material" or products and material containing "tainted drywall material";

    (c) Disposal of actual or alleged "tainted drywall material" or the taking of action necessary to prevent, minimize or mitigate damage to the public health or welfare or to the environment which may otherwise result;

    (d) Compliance with any law or regulation regarding "tainted drywall material";

    (e) Existence, storage, handling or transportation of "tainted drywall material"; or

    (f) Supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given with respect to "tainted drywall material."

(3) Any obligation to share damages with or repay someone else in connection with Paragraphs (1) or (2) of this exclusion.

As used in this exclusion:

(4) "Tainted drywall material" means any:

    (a) Drywall, plasterboard, sheetrock or gypsum board; or

    (b) Material used in the manufacture of drywall, plasterboard, sheetrock or gypsum board;

    which:

        (i) Produces sulfuric odors, sulfuric gas, and/or sulfuric acid;

        (ii) Causes or contributes to the corrosion or oxidation of metal, including but not limited to metal in pipes, wiring, heating, ventilation and air conditioning systems; or

        (iii) Contains synthetic gypsum, fly ash or any other material derived from coal-fired power plants, or arsenic or any radioactive compounds.

NX GL 129 01 10                                                                  **Page 1 of 2**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

(5) "Reduction in value" means the actual or alleged diminution in value, impairment, devaluation or loss of use of tangible property, whether or not physically injured.

It is further agreed we shall have no duty to investigate, defend or indemnify any insured against any loss, claim "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," "personal and advertising injury," "reduction in value" or cost or expense to which this endorsement applies.

**NOTICE:**

1.   THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.   THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3.   THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.   THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT  THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.

5.   FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6.   FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL

INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7.     CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA D E PARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8.     IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

**D-2 (Effective July 21, 2011)**

**EXHIBIT "B"**

## NOTICE TO BUILDER PURSUANT TO CALIFORNIA CIVIL CODE §895 BY MEIR AND OSHER RADDY, SUCCESSORS IN INTEREST TO THE HARKHAM FAMILY ENTERPRISES, L.P.

### January 10, 2018

### THIS NOTICE AFFECTS YOUR RIGHTS

### <u>PLEASE READ IT CAREFULLY</u>

**YOUR RIGHTS ARE AFFECTED BY THIS WRITTEN NOTICE. THIS NOTICE IS GIVEN PURSUANT TO CALIFORNIA CIVIL CODE §895. THE PURPOSE OF THIS NOTICE IS TO INFORM YOU THAT THE ABOVE NAMED PARTY HAS A CLAIM FOR DEFECTS IN THE DESIGN AND/OR CONSTRUCTION OF THAT PROPERTY COMMONLY KNOWN AS 936 SOUTH BURNSIDE, LOS ANGELES, CALIFORNIA. YOU SHOULD CAREFULLY READ CALIFORNIA CIVIL CODE §895 TO DETERMINE YOUR SPECIFIC RIGHTS AND OBLIGATIONS.**

### <u>NOTICE TO BUILDER</u>

**NOTICE IS HEREBY GIVEN THAT:**

Meir and Osher Raddy, successors in interest to the Harkham Family Enterprises, L.P. (hereinafter the "Owner") hereby formally gives you notice that it has a claim for standards, defects, and/or conditions in the design and/or construction of the property located at 936 South Burnside, Los Angeles, California ("Property").

This Notice shall, upon its mailing on the date set forth herein and as reflected in the accompanying Proof of Service completed pursuant to California Code of Civil Procedure

1

§1013(a), toll all statutory and contractual limitations on actions against all parties who may be responsible for the damages claimed, whether named in this Notice or not, including claims for indemnity applicable to the claim.

This Notice is provided by the Owner pursuant to California Civil Code §895.

**(A)** **List of Defects:**

With reservation to amend, modify, delete or add to the Notice required by this provision, the Owner provides an initial list of standards, defects, and/or conditions at issue, attached hereto as Exhibit "A."

The Owner reserves the right to provide the results of any reports, investigation, and testing in the future.

**(B)** **Builder Response to this Notice:**

Any and all responses, notices or other communications from you, as the "Builder," to the Owner pursuant to the Civil Code should be in writing to: Marc Rohatiner, WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP, 11400 West Olympic, Boulevard, Ninth Floor, Los Angeles, California 90064-1582.

DATED: January 11, 2018          WOLF, RIFKIN, SHAPIRO,
                                 SCHULMAN & RABKIN, LLP

                                 By: _____
                                 MARC E. ROHATINER
                                 Attorneys for MEIR RADDY and OSHER RADDY



January 5, 2018

Marc Rohatiner
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, CA 90064

**Corporate Office**
2191 South Dupont Drive
Anaheim, CA 92806
T 714.453.6300
T 800.834.2323
F 714.453.6301

Project:   Dan Harkham and Meir Raddi Residence
936 South Burnside Ave
Los Angeles, CA 90036

Dear Mr. Rahatiner:

Attached for your review is our preliminary defect list based on a limited forensic
investigation performed on October 23, 2017.

**Regional Offices:**
Los Angeles
T 800.834.2323
San Diego
T 800.834.2323
San Francisco
T 800.834.2323
Coachella Valley
T 800.834.2323

www.OCBSonline.com

**Defect Description:**

**1.0 Site Work**

Improper design detailing and/or construction of the site improvements
which include but not limited to the following:

1.1   Grading/Pad elevation
1.2   Drainage under and around house structure
1.3   Site walls
1.4   Concrete/Stone flatwork
1.5   Planters
1.6   Pool/Spa
1.7   Barbecue Island

**2.0 House Structure**

Improper design, detailing and/or construction of the house structure which
include but not limited to the following:

**Exterior**

2.1   Concrete/Footings

2.2   Door and window installation directly related to the finish floor elevation

2.3   Stucco/Stone façade and associated sheet metal flashing

2.4   Damage to wood framed structure

**3.0 Interior**

Improper design, detailing and/or construction of interior components which include but are not limited to the following:

3.1   Interior wood framing
3.2   Interior drywall
3.3   Interior flooring
3.4   Interior insulation
3.5   Interior doors and casings
3.6   Interior cabinetry

Due to the severity of the defect repairs and potential environmental issues associated with the defects, it will be necessary to relocate the occupants and contents of the structure while the defect repairs are in progress. Assume 9 to 12 months for the necessary work to be performed.

Should you require any additional information, please do not hesitate to contact me.

Respectfully,

Kevin Franklin
President and CEO

**Corporate Office**
2191 South Dupont Drive
Anaheim, CA 92806
T 714.453.6300
T 800.834.2323
F 714.453.6301

**Regional Offices:**
Los Angeles
T 800.834.2323
San Diego
T 800.834.2323
San Francisco
T 800.834.2323
Coachella Valley
T 800.834.2323

www.OCBSonline.com

**EXHIBIT "C"**



CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 12 2018

Sherri R. Carter, Executive Officer/clerk
BY Shaunya Bolden, Deputy

1   MARC E. ROHATINER (State Bar No. 82709)
    mrohatiner@wrslawyers.com
2   MICHAEL SIGALL (State Bar No. 305849)
    Msigall@wrslawyers.com
3   WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
    11400 West Olympic Boulevard, 9th Floor
4   Los Angeles, California 90064-1582
    Telephone:   (310) 478-4100
5   Facsimile:   (310) 479-1422

6   Attorneys for plaintiffs, MEIR RADDY and
    OSHER RADDY

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10                                              BC 7 1 3 9 1 9

11  MEIR RADDY and OSHER RADDY,          Case No.

12              Plaintiffs,              **COMPLAINT FOR DAMAGES**

13      vs.                              Trial Date:    None

14  SCOTT YANG, KELLY YANG; SKYAN
    HOLDINGS, LLC, a California limited
15  liability company; and DOES 1 through
    50, inclusive,
16
                Defendants.
17

18

19              **GENERAL ALLEGATIONS**

20      1.      The true names or capacities, whether individual, corporate, associate,

21  governmental or otherwise, of defendants sued herein as DOES 1 through 50, inclusive,

22  are unknown to plaintiffs at the present time and plaintiffs, therefore, sues said defendants

23  by such fictitious names; plaintiffs after obtaining leave of Court, if necessary, will amend

24  this complaint to show such true names and capacities when they have ascertained same.

25      2.      Plaintiffs are informed and believe, and thereon allege, that defendants, and

26  each of them, designated herein as DOES 1 through 50, inclusive, are responsible in some

27  manner for the occurrences and happenings herein alleged, and that plaintiffs' injuries and

28  damages as herein alleged were and are the direct and proximate result of the actions of

─────────────────────────────────────
COMPLAINT FOR DAMAGES

1   said defendants, and each of them.  Said defendants are sued as principals or agents,

2   partners, servants and employees of said principals, or any combination thereof, and all of

3   the acts performed by them as agents, partners, servants and employees were performed

4   within the course and scope of their employment, and with the knowledge, consent,

5   approval and ratification of said principals, and each of them.

6          3.     Plaintiffs are informed and believe, and thereon allege, that at all times

7   mentioned herein, each of the defendants was the agent, employee and partner of each of

8   the remaining defendants, and was acting within the scope and authority of such agency,

9   employment and partnership and with the knowledge, consent, approval and ratification of

10  the remaining defendants, and each of them.

11         4.     Whenever in this complaint reference is made to any act of a defendant, such

12  allegation shall be deemed to mean the acts of the defendants named in the particular cause

13  of action, and each of them, acting individually, jointly and severally.

14         5.     At all times mentioned herein, plaintiffs, MEIR RADDY and OSHER

15  RADDY ("Plaintiffs"), were and now are:

16                a.     Individuals residing in Los Angeles, California;

17                b.     The owners of that single family residence commonly known as 936

18  South Burnside Avenue, Los Angeles, California (the "Property"); and,

19                c.     The successor in interest and assignee of Harkham Family

20  Enterprises, L.P. ("Harkham Enterprises").

21         6.     Plaintiffs are informed and believe, and thereon allege that at all times

22  mentioned herein, defendants, SCOTT YANG and KELLY YANG, were and now are:

23                a.     Individuals residing in Los Angeles, California; and,

24                b.     The owner/builders of the single family residence located on the

25  Property (the "Project").

26         7.     Plaintiffs are informed and believe and thereon allege that at all times

27  mentioned herein, defendant, SKYAN HOLDINGS, LLC (together with SCOTT YANG

28  and KELLY YANG, Defendants"), was and now is:

1          a.      A limited liability company existing under the law of California; and,

2          b.      Maintaining its principal place of business in Los Angeles County,

3  California.

4     8.     Defendants all participated in the construction, design, development of the

5  Project and sale of the Property to Plaintiffs' predecessor in interest, Harkham Enterprises.

6     9.     On or about August 17, 2016, pursuant to a written purchase and sale

7  agreement, Harkham Enterprises purchased the Property from Defendants for

8  $2,600,000.00 (the "Agreement").  Thereafter, Harkham Enterprises transferred its interest

9  in the Property to Plaintiffs and assigned all of its rights, title and interest it had in the

10  Property and any rights arising out of the Agreement.

11     10.    Beginning in and about November 2016, Plaintiffs discovered a variety of

12  latent defects and deficiencies with the Project, including but not limited to the defective

13  construction of grading, draining system, building foundation, garage slab and

14  waterproofing systems (the "Defects").

15     11.    The Defects were and are of a nature and character which were not apparent

16  to Plaintiffs or Harkham Enterprises upon reasonable inspection.

17     12.    The Defects all of which have caused and continue to cause severe resulting

18  damage.  The damages caused by the Defects are latent, progressive, and continuing.

19  **FIRST CAUSE OF ACTION**

20  **(Negligence As Against All Defendants)**

21     13.    Plaintiffs refer to and incorporate by reference paragraphs 1 through 12,

22  inclusive of the Complaint.

23     14.    Defendants, as developers, owners, contractors, subcontractors, materialmen,

24  suppliers, architects, inspectors, engineers, builders, and/or sellers, performed work, labor,

25  and/or services upon the Project  and each knew, or should have known, that if the Project

26  was not properly or adequately designed, supervised and/or constructed, that the owners

27  and users thereof would be substantially damaged thereby and that the Project would be

28  defective and not of merchantable quality.

3169293.1

COMPLAINT FOR DAMAGES

15.     Defendants were under a duty to exercise ordinary and reasonable care as developers, owners, contractors, subcontractors, materialmen, suppliers, architects, engineers, builders and/or sellers, or otherwise to avoid reasonably foreseeable injury to users and purchasers of the Property and knew or should have known with reasonable certainty that purchasers and/or users would suffer the monetary damages set forth herein if Defendants failed to perform their duty to cause the Project to be completed in a proper and workmanlike manner and fashion.

16.     Defendants failed and neglected to perform the work, labor, and/or services properly or adequately in that each of the Defendants negligently, carelessly and in an unworkmanlike manner performed the aforesaid work, labor and/or services such that the Project as described herein was constructed improperly, negligently, carelessly, and in an unworkmanlike manner.

17.     As a direct and proximate result of the foregoing negligence, carelessness, unworkmanlike conduct, and the actions and/or omissions by Defendants, Plaintiffs have suffered and will suffer general, special, consequential and incidental damages, including investigation costs, in an amount unknown at this time.  Plaintiff will establish the precise amount of damages at trial, according to proof.

## SECOND CAUSE OF ACTION

### (Strict Liability Against All Defendants)

18.     Plaintiffs refer to and incorporate by reference paragraphs 1 through 12, inclusive, and paragraph 17 of the Complaint.

19.     Defendants as developers, sellers, builders, designers, manufacturers and/or mass producers of homes, such as the Project, knew that the Project would be sold to and used by members of the general public for purposes of residential dwellings and Defendants knew or reasonably should have known that the persons who purchased these dwellings would do so without inspection for or knowledge of the defects set forth herein.

20.     Plaintiffs relied upon the skill, knowledge and expertise of Defendants in their participation in the process of the design, planning, development, construction and

sale of the Project, to produce and construct dwellings that would be reasonably fit for their intended purpose.  Plaintiff also relied upon the implied representations of Defendants that the Project was erected in a workmanlike manner and reasonably fit for continued habitation and use.  Plaintiffs were led to believe by Defendants that unknown defects were insignificant in nature or repaired or did not exist.

21.    Defendants knew or had reason to know that Plaintiffs would rely on the skill, judgment and expertise of each of these defendants, in producing and constructing dwellings that would be reasonably fit for their intended purpose and that Plaintiffs were ignorant of the Defects.

22.    Plaintiffs  did not have an opportunity to participate in the design or construction of the Project.  The Project was sold to Plaintiffs without substantial change in their condition and the Project has been utilized for the use for which it was designed and developed and in the manner reasonably intended.

23.    Plaintiff has timely notified Defendants of the Defects.  Notwithstanding such notice, Defendants have declined and failed to acknowledge responsibility of the same or otherwise cause the appropriate restoration and/or repairs to he made to the Project.

24.    Defendants are developers, owners, mass-producers, manufacturers of component parts and systems, builders and sellers of homes, and therefore are strictly liable and responsible to Plaintiffs for all damages suffered as a result of the Defects.

### THIRD CAUSE OF ACTION

### (Breach of the Implied Warranty Against All Defendants)

25.    Plaintiffs refer to and incorporate by reference paragraphs 1 through 12, inclusive, and paragraphs 17 and 24 of the Complaint.

26.    Defendants were merchants and sellers of newly constructed housing, the type of merchandise sold to Plaintiffs.

27.    Defendants at the time and place of the sale of the Property, impliedly warranted that the Project was of merchantable quality and properly constructed.

28.     The Project, however, was not of merchantable quality, and was not properly constructed.

## FOURTH CAUSE OF ACTION

### (Breach of Third Party Beneficiary Contract As Against DOES 25 through 50, inclusive)

29.     Plaintiffs refer to and incorporate by reference paragraphs 1 through 12, inclusive, and paragraph 17 of the Complaint.

30.     Does 26 through 50, inclusive ("Subcontractor Defendants"), inclusive entered into written contracts with the other Defendants pursuant to which Subcontractor Defendants agreed to perform services on the Project.  The contracts were made and entered into for the benefit of Plaintiffs in that the purpose of each agreement was to construct a component part of the Project that would be and were subsequently sold to members of the general public such as Plaintiffs.

31.     Subcontractor Defendants breached the contracts in that they failed to perform their services in a workmanlike manner and in accordance with the plans and specifications for the Project and applicable building codes.

32.     Subcontractor Defendants knew that their construction of components of the Project would directly benefit Plaintiffs who are members of the class for whose benefit the contracts were made and that Subcontractor Defendants knew that Plaintiffs would be third party beneficiaries of the contracts.

## FIFTH CAUSE OF ACTION

### (Violation of Standards for Residential Construction Against all Defendants)

33.     Plaintiffs refer to and incorporate by reference paragraphs 1 through 12, inclusive, and paragraph 17 of the Complaint.

34.     Civil Code Section 896 et. seq. sets, defines, and imposes standards with respect to residential construction and the functions and components of structures, dwellings, buildings, and improvements ("Standards").

35.     Defendants are liable for damages arising out or related to deficiencies in the

1  construction, design, specifications, surveying, planning, supervision, testing and

2  observation of the Project.

3      36.    Defendants are responsible for violating the Standards by virtue of their

4  respective involvements in the Project.

5      WHEREFORE, Plaintiffs pray for judgment on all causes of action as follows:

6      1.    For general, special, consequential and incidental damages according to

7  proof;

8      2.    For costs of suit incurred herein; and,

9      3.    For such other relief as the Court deems proper.

10  DATED: July 12, 2018          WOLF, RIFKIN, SHAPIRO,
                                  SCHULMAN & RABKIN, LLP

11

12

13                              By: _____

14                                  MARC E. ROHATINER
                                    Attorneys for plaintiffs, MEIR RADDY and
15                                  OSHER RADDY

16

17

18

19

20

21

22

23

24

25

26

27

28

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>11/09/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Clifton _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV41213 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Kristin S. Escalante | 24 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 11/09/2021
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Clifton _____ , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 0 3 2019**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
                                )
                                )
                                )

FIRST AMENDED GENERAL ORDER

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

   a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

   b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

   a) The following documents shall not be filed electronically:

      i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

      ii) Bonds/Undertaking documents;

      iii) Trial and Evidentiary Hearing Exhibits

      iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

      v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

   b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

    Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

    If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

    Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

  a) Filed Date

    i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

    ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

  a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

  a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

  b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i)   Any printed document required pursuant to a Standing or General Order;

    ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii) Pleadings and motions that include points and authorities;

    iv)  Demurrers;

    v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi)  Motions for Summary Judgment/Adjudication; and

    vii) Motions to Compel Further Discovery.

  c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

  a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

  b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED:  May 3, 2019                KEVIN C. BRAZILE

11                                                        Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   <span>(INSERT DATE)</span>      <span>(INSERT DATE)</span>
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR PLAINTIFF)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

Date:

_____  ➤  _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                      FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)          (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____          _____
                                          JUDICIAL OFFICER

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| General Order Re<br>Use of Voluntary Efficient Litigation<br>Stipulations<br>)<br>)<br>)<br>)<br>)<br>) | ORDER PURSUANT TO CCP 1054(a),<br>EXTENDING TIME TO RESPOND BY<br>30 DAYS WHEN PARTIES AGREE<br>TO EARLY ORGANIZATIONAL<br>MEETING STIPULATION |

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

_____

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

Peter J. Schulz, Esq. (SBN 167646)
pjs@sbrlawsd.com
Tommy U. Schroeder, Esq. (SBN 317542)
ts@sbrlawsd.com
SCHULZ BRICK & ROGASKI
600 West Broadway, Suite 960
San Diego, California 92101
Tel:  (619) 234-3660
Fax:  (619) 234-0626

Attorneys for Plaintiffs SKYAN HOLDINGS LLC,
SCOTT YANG and KELLY YANG

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SKYAN HOLDINGS LLC;<br>SCOTT YANG; and<br>KELLY YANG,<br><br>      Plaintiffs,<br><br>      v.<br><br>ASSOCIATED INDUSTRIES INSURANCE<br>COMPANY, INC.; and<br>DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No.: 21STCV41213<br><br>[Related Cases:  BC13919; BC722013]<br><br>**NOTICE OF MOTION AND MOTION THAT DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND**<br><br>**[Insurance Code § 1620(b)(2)]**<br><br>**Date:**   February 9, 2022<br>**Time:**   8:30 a.m.<br>**Dept.:**   32<br>**Judge:**  Daniel S. Murphy<br><br>**Reservation No.:** 826831533093 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 9, 2022, at 8:30 a.m., or as soon thereafter as the matter may be heard in Department 32 of the above-encaptioned Court, located at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012, Plaintiffs SKYAN HOLDINGS LLC, SCOTT YANG and KELLY YANG ("Plaintiffs") will, and hereby do, move the Court for an order requiring Defendant ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. ("AIIC") to post a bond before proceeding in this action pursuant to Insurance

NOTICE OF MOTION AND MOTION THAT DEFENDANT ASSOCIATED INDUSTRIES
INSURANCE COMPANY, INC. POST A BOND

1  Code section 1616, et seq.  Alternatively, Plaintiffs seek an order that AIIC provide appropriate

2  financial records pursuant to Insurance Code section 1620(b)(2).

3          The motion is based upon the accompanying Memorandum of Points and Authorities,

4  the Declaration of Stephen Youngerman, the pleadings and records on file in this action, and

5  upon such further evidence and/or argument as may be presented at the time of the hearing on

6  the motion.

7

8  Dated: January __5__, 2022                    SCHULZ BRICK & ROGASKI

9                                                By: _____

10                                                     Peter J. Schulz, Esq.
                                                       Tommy U. Schroeder, Esq.
11                                                     Attorneys for SKYAN HOLDINGS LLC,
                                                       SCOTT YANG and KELLY YANG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Peter J. Schulz, Esq. (SBN 167646)
    pjs@sbrlawsd.com
2   Tommy U. Schroeder, Esq. (SBN 317542)
    ts@sbrlawsd.com
3   SCHULZ BRICK & ROGASKI
    600 West Broadway, Suite 960
4   San Diego, California 92101
    Tel:  (619) 234-3660
5   Fax:  (619) 234-0626

6   Attorneys for Plaintiffs SKYAN HOLDINGS LLC,
    SCOTT YANG and KELLY YANG

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

| 11  SKYAN HOLDINGS LLC; | Case No.: 21STCV41213 |
|---|---|
| 12  SCOTT YANG; and KELLY YANG, | [Related Cases:  BC13919; BC722013] |
| 13       Plaintiffs, | |
| 14            v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION THAT DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND** |
| 15  ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.; and | |
| 16  DOES 1 through 50, inclusive, | |
| 17       Defendants. | **[Insurance Code § 1620(b)(2)]** |
| 18 | **Date:**   February 9, 2022 |
| 19 | **Time:**   8:30 a.m. |
| 20 | **Dept.:**   32 <br> **Judge:**   Daniel S. Murphy |
| 21 | **Reservation No.:** 826831533093 |

22

23          Plaintiffs submit the following Memorandum of Points and Authorities in support of their

24   motion to require Defendant ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.

25   ("AIIC") to post a bond sufficient to respond to and cover Plaintiffs' attorneys' fees, costs, and

26   judgment in this lawsuit, as well as the defense fees, costs and any potential adverse judgment

27   in the related case filed against Plaintiffs, Case No. BC713919 (hereinafter the "Raddy Action").

28   In the alternative, Plaintiffs seek an order requiring AIIC to provide appropriate financial records

SKY-001 | Skyan Mtn to Post Bond (Ps&As) 010522                    -1-

1   pursuant to Insurance Code section 1620(b)(2).

2

# I.

3

# **INTRODUCTION**

4       This lawsuit is the second time that Plaintiffs have been required to file suit against AIIC

5   for failure to defend Plaintiffs in the underlying and related <u>Raddy</u> Action.  The first lawsuit was

6   filed in September of 2018, Case No. BC722013, and a motion to require AIIC to post a bond

7   pursuant to Insurance Code section 1616 was filed.  Subsequent to the filing of that motion,

8   however, AIIC agreed to defend Plaintiffs against the <u>Raddy</u> Action and the case was dismissed.

9   It is now clear that AIIC's agreement was illusory as Plaintiffs find themselves in the same –

10  if not worse – position.

11       AIIC has (a) failed to properly manage or fund the defense; (b) failed to pay experts

12  retained on behalf of Plaintiffs to defend the underlying case thereby requiring Plaintiffs to

13  pay the experts out of their own pocket; (c) failed to communicate with Plaintiffs or Plaintiffs'

14  counsel; and (d) failed to make any response to a policy limits demand in the underlying <u>Raddy</u>

15  Action which has now lapsed.  Given the complete lack of communication from AIIC, Plaintiffs

16  believe that AIIC has abandoned the defense and abandoned its legal duties towards its insureds.

17       Given the abandonment of its insureds and its refusal and/or inability to pay for the defense

18  of the underlying <u>Raddy</u> Action, there is a reasonable doubt as to the present ability of AIIC to

19  satisfy any final judgment in the <u>Raddy</u> Action.  Therefore, AIIC should be required to post a bond

20  in an amount sufficient to secure the payment of Plaintiffs' fees and costs in this action, as well as

21  the fees, costs and any potential judgment in the underlying <u>Raddy</u> Action pursuant to Insurance

22  Code section 1620(b)(2).

23

# II.

24

# **FACTUAL BACKGROUND**

25       On or about March 30, 2015 Defendant AIIC issued a policy of general liability insurance

26  to Plaintiff bearing policy number AES1034393 00 ("Policy").  By accepting premiums from and

27  issuing the Policy to Plaintiff, AIIC had a contractual obligation to Plaintiffs to provide a defense

28  to any lawsuit or claim alleging potentially covered property damage, and thereafter indemnifying

SKY-001 | Skyan Mtn to Post Bond (Ps&As) 010522        -2-

1   Plaintiffs as required under the terms of the Policy.

2       Prior to issuing the Policy, Defendant and/or is designated representatives  and assigned

3   surplus lines broker represented to the California Department of Insurance and the general public,

4   such as Skyan and Yang, that it was and is an experienced insurer that had previously issued a

5   significant number of general liability insurance policies to businesses located in California such

6   as Skyan and to California citizens such as Plaintiff Yang.  Plaintiffs contend that AIIC does not

7   have sufficient familiarity with its contractual, regulatory and statutory obligations to meet its

8   obligations owed to Plaintiffs, and that it has no intention of meeting its statutory, regulatory

9   and/or contractual obligations to Plaintiffs, including but not limited to maintaining sufficient

10  financial assets to respond to claims against its insureds.

11      On or about January 10, 2018, a Civil Code §895 demand ("Claim") regarding the property

12  developed by Plaintiff Skyan, was sent to Plaintiff Skyan and Plaintiff Yang.  The Claim alleged

13  covered property damage that was not otherwise excluded by the Policy.  (Youngerman Decl. at

14  ¶ 4.)  Plaintiffs timely tendered the Claim to AIIC.  AIIC acknowledged the tender on or about

15  February 28, 2018 and advised that it would timely, investigate and substantively respond to the

16  tender of the Claim.  (Id.)

17      Since February 28, 2018, Plaintiffs sent numerous communications to AIIC advising

18  of the statutorily allowed inspections of the property, the retention of Skyan's consultants, the

19  results of the inspections, the damages being claimed by Raddy, and made numerous requests that

20  AIIC provide a substantive response to the tender.  (Youngerman Decl. at ¶ 5.)

21      On or about July 12, 2018, Meir Raddy and Osher Raddy filed the Raddy Action with

22  the Superior Court of Los Angeles County [Case No. BC713919].  The Raddy Action sets forth

23  allegations that include and exceed the allegations set forth the Claim.  Skyan and Yang were

24  each named as Defendants in the Raddy Action.  (Youngerman Decl. at ¶ 6.)  On August 23, 2018,

25  the Complaint and other documents in the Raddy Action were sent to the representative of AIIC

26  along with a request that AIIC accept the defense of Plaintiff Skyan and Plaintiff Yang.  (Id. at ¶ 7.)

27      AIIC did not respond to the timely tender of defense and, on September 17, 2018,

28  Plaintiffs filed an action in the Los Angeles Superior Court, Case No. BC722013, against AIIC

SKY-001 | Skyan Mtn to Post Bond (Ps&As) 010522

-3-

1 and also filed a motion to require it to post a bond pursuant to Insurance Code section 1616.

2 (Youngerman Decl. at ¶ 8.)  That motion was never heard because, on December 7, 2018, AIIC

3 agreed to defend Plaintiffs against the allegations in the <u>Raddy</u> Action pursuant to a reservation

4 of rights.  Based on AIIC's agreement to defend Plaintiffs, Case No. BC722013 was dismissed

5 without prejudice.  (<u>Id.</u>)

6      Notwithstanding its agreement to defend Plaintiffs in the <u>Raddy</u> Action, AIIC has failed

7 to properly manage or fund the defense, and has failed to timely communicate material issues

8 affecting the rights and benefits of the Plaintiffs to which they are entitled under the AIIC policy.

9 (Youngerman Decl. at ¶ 9.)

10      On June 25, 2021, counsel for Plaintiffs provided AIIC with a statutory demand for

11 settlement within policy limits that expired on July 16, 2021.  Plaintiffs demanded that AIIC

12 timely agree to respond to the policy limit demand by tendering the full available policy limits

13 available for settlement of all claims.  (<u>Id.</u> at ¶ 9(a).)

14      Having receive no response from AIIC to the request for settlement within policy limits,

15 counsel for Plaintiffs obtained an additional extension through July 30, 2021 to respond to the

16 policy limit offer of settlement and communicated this extension to AIIC on June 30, 2021.  (<u>Id.</u> at

17 ¶ 9(b).)  Between June 30, 2021 and August 18, 2021, Plaintiffs' counsel made repeated attempts

18 to reach AIIC's appointed claims handler by phone and through emails without any response or

19 correspondence whatsoever.  (<u>Id.</u> at ¶ 9(c).)

20      On September 5, 2021, counsel for Plaintiffs again attempted to communicate with AIIC

21 without success, causing Plaintiffs to believe that AIIC has abandoned the defense and abandoned

22 its legal duties towards its insured.  (<u>Id.</u> at ¶ 9(d).)

23 **III.**

24 **<u>INSURANCE CODE SECTION 1620 PROVIDES THIS COURT</u>**

25 **<u>WITH THE AUTHORITY TO REQUIRE AIIC TO POST A BOND</u>**

26 **<u>BEFORE AIIC IS ALLOWED TO FILE ANY PLEADINGS IN THIS ACTION</u>**

27      Insurance Code section 1620(b) provides that this Court may require an insurer to file a

28 bond, in an amount sufficient to secure the payment of any final judgment which may be rendered,

1    unless one of the enumerated exceptions applies.  In opposing the prior motion to require a bond,

2    AIIC argued that it met one of the exceptions because it was an "eligible surplus line insurer"

3    in accordance with Insurance Code section 1765.1 (see Insurance Code § 1620(b)(2)).  Even if

4    AIIC is an eligible surplus lines insurer, however, this Court may still require a bond if "by facts

5    presented to the court there is created a reasonable doubt as to the present ability of the insurer

6    to satisfy any final judgment in the action . . . ."

7         Here, the undisputed facts establish tat despite agreeing to defend the Plaintiffs in the

8    Raddy Action, AIIC has (a) failed to actually fund that defense; (b) failed to pay experts retained

9    on behalf of the Plaintiffs in the underlying action, thereby requiring Plaintiffs to pay those experts

10   out of their own pocket so that the experts would not withdraw from the case; and (c) failed to

11   make any response to a policy limits demand from the Raddy Plaintiffs.  (Youngerman Decl. at

12   ¶¶ 9-10.)  Moreover, AIIC has failed to communicate with Plaintiffs or their counsel.  AIIC's

13   abandonment of its insureds and failure to pay the fees and costs associated with defending against

14   the Raddy Action certainly create a reasonable doubt as to its ability to satisfy any final judgment

15   which may be obtained in the Raddy Action.  Under these circumstances this Court can, and

16   should, require that a bond be posted.  This is especially true here because AIIC was already

17   sued for failing to defend its insureds and only agreed to defend after it was sued and a motion

18   to post a bond was pending.

19                                    **IV.**

20              **AIIC IS REQUIRED TO PROVIDE FINANCIAL RECORDS**

21        Section 1620(d)(2) also provides that upon request of a party, the insurer "shall provide

22   the court and the party requesting the bond with copies of documents relating to the financial

23   condition of the insurer, including, but not limited to, copies of the insurer's most recent annual

24   statement and audited financial report and, where applicable, a certified copy of the trust

25   agreement required by subdivision (b) of section 1765.2 and a verified copy of the most recent

26   quarterly statement or list of assets in the trust."  Pursuant to section 1620(b)(2), Plaintiffs request

27   that AIIC provide the Court and Plaintiffs with the required documentation.

28   /././

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
THAT DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND

## **CONCLUSION**

Plaintiffs fully anticipate that AIIC will, as it did in opposition to the prior bond motion, assert that it has millions of dollars in assets to satisfy any judgment which may be entered in the <u>Raddy</u> Action.  The undisputed facts are, however, that despite agreeing to defend the <u>Raddy</u> Action AIIC has not paid for that defense.  The failure to fund a defense constitutes a breach of the duty to defend and Plaintiffs have now been forced to file a second lawsuit against AIIC while at the same time paying to defend themselves in the <u>Raddy</u> Action – payments which are the responsibility of AIIC.  Under the circumstances, requiring AIIC to post the bond required by the Insurance Code is certainly justified.

Plaintiffs request that the Court require AIIC to post a bond in the amount sufficient to cover all potential judgments, fees and costs in both actions up to $5,000,000 pursuant to Insurance Code section 1620(b)(2).

Dated: January ___, 2022

SCHULZ BRICK & ROGASKI

By: _____
    Peter J. Schulz, Esq.
    Tommy U. Schroeder, Esq.
    Attorneys for SKYAN HOLDINGS LLC,
    SCOTT YANG and KELLY YANG

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
THAT DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND

1  1Peter J. Schulz, Esq. (SBN 167646)
   pjs@sbrlawsd.com
2  Tommy U. Schroeder, Esq. (SBN 317542)
   ts@sbrlawsd.com
3  SCHULZ BRICK & ROGASKI
   600 West Broadway, Suite 960
4  San Diego, California 92101
   Tel:  (619) 234-3660
5  Fax:  (619) 234-0626

6  Attorneys for Plaintiffs SKYAN HOLDINGS LLC,
   SCOTT YANG and KELLY YANG

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11 | SKYAN HOLDINGS LLC;            | Case No.: 21STCV41213
   | SCOTT YANG; and               |
12 | KELLY YANG,                   | [Related Cases:  BC13919; BC722013]
   |                               |
13 |        Plaintiffs,            | **DECLARATION OF STEPHEN
   |                               | YOUNGERMAN IN SUPPORT
14 |              v.               | OF PLAINTIFFS' MOTION THAT
   |                               | DEFENDANT ASSOCIATED INDUSTRIES
15 | ASSOCIATED INDUSTRIES INSURANCE | INSURANCE COMPANY, INC.
   | COMPANY, INC.; and            | POST A BOND**
16 | DOES 1 through 50, inclusive, | **[Insurance Code § 1620(b)(2)]**
   |                               |
17 |        Defendants.            | **Date:**     February 9, 2022
   |                               | **Time:**     8:30 a.m.
18 |                               | **Dept.:**    32
   |                               | **Judge:**    Daniel S. Murphy
19 |                               |
20 |                               | **Reservation No.:** 826831533093

21        I, Stephen Youngerman, declare:

22        1.    I am an attorney duly licensed to practice law before all courts of the state of

23 California, and am formerly a partner with the law firm Youngerman & McNutt, LLP, who

24 previously represented Plaintiffs in this matter.  I have personal knowledge of the matters set

25 forth in this declaration, and, if called as a witness, could and would competently testify to them.

26        2.    I have practiced law in California since 1981.  During that time, I have represented

27 both insureds and insurers in litigated and non-litigated matters involving construction and

28 construction coverage-related matters.  Over that time frame, I estimate that I have been involved

SKY-001 | Skyan Mtn to Post Bond (Decl Youngerman) 010322              -1-

DECLARATION OF STEPHEN YOUNGERMAN IN SUPPORT OF PLAINTIFFS' MOTION THAT
DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND

1  in over 300 such matters.

2       3.     Plaintiff Skyan LLC (SKYAN) built a single-family home located at 936 South

3  Burnside Avenue, Los Angeles, California ("Property").  The principals of SKYAN were

4  Plaintiffs Scott Yang and Kelly Yang (jointly "YANG"). SKYAN and YANG are sometimes

5  referred to as Plaintiffs. Prior to building the property, Plaintiffs purchased a policy of General

6  Liability Insurance (Policy) from Defendant Associated Industries Insurance Company (AIIC).

7  SKYAN subsequently sold the Property.

8       4.     On or about January 10, 2018, counsel for Meir and Osher Raddy (sometime

9  jointly referred to as Raddy) sent a Civil Code section 895 demand ("Claim") regarding the

10  Property to Plaintiff SKYAN and Plaintiffs YANG.  At or about that time Youngerman &

11  McNutt LLP was retained by Plaintiffs to represent them regarding the Claim. The Claim alleged

12  covered property damage that was not otherwise excluded by the policy.  Plaintiffs timely

13  tendered the claim to AIIC.  AIIC acknowledged the tender on or about February 28, 2018, and

14  advised that it would timely investigate and substantively respond to the tender of the Claim.

15       5.     From February 28, 2018 through July 12, 2018 I personally sent and/or reviewed

16  numerous communications that were then sent to AIIC advising of the statutorily allowed

17  inspections of the Property, the retention of SKYAN's consultants, the results of the consultants'

18  inspections, the damages being claimed by Raddy, and made numerous requests that AIIC

19  provide a substantive response to the tender. At no time has AIIC objected to the consultants

20  retained by SKYAN. Prior to the filing of this Complaint, AIIC agreed to pay the fees and costs

21  of these consultants.

22       6.     On or about July 12, 2018, Meir Raddy and Osher Raddy filed a Complaint with

23  the Superior Court, County of Los Angeles [Case No. BC713919] seeking damages against

24  SKYAN and YANG (Raddy Complaint).  The Raddy Complaint sets forth allegations that

25  include and exceed the allegations set forth in the Claim.  SKYAN and YANG were each named

26  as Defendants in the Raddy action.

27       7.     On August 23, 2018, the Raddy Complaint and other documents were sent to the

28  representative of AIIC along with a request that AIIC accept the defense of Plaintiff SKYAN and

SKY-001 | Skyan Mtn to Post Bond (Decl Youngerman) 010322.sy     -2-

DECLARATION OF STEPHEN YOUNGERMAN IN SUPPORT OF PLAINTIFFS' MOTION THAT
DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND

1  Plaintiff YANG.

2        8.     AIIC did not respond to the timely tender of defense.  Therefore, on September 17,

3  2018, the Plaintiffs filed a Complaint in the Los Angeles County Superior Court, and it was

4  assigned Case No. BC722013. The Complaint named  AIIC as a Defendant. A Motion was also

5  filed requiring AIIC to post a bond pursuant to Insurance Code section 1616.  That Motion was

6  never heard because, on December 7,2018, AIIC finally agreed to defend Plaintiffs against the

7  allegations in the Raddy action pursuant to a reservation of rights.  Based on AIIC's agreement to

8  defend Plaintiffs, Case No. BC722013 was dismissed without prejudice.

9        9.     Notwithstanding its agreement to defend Plaintiffs in the Raddy action, AIIC has

10  since abandoned its insureds, SKYAN and YANG and failed to properly manage or fund the

11  defense.  In particular, AIIC has not communicated with SKYAN or the undersigned regarding

12  material issues affecting the rights and benefits of the Plaintiffs to which they are entitled to under

13  the policy.  For example:

14        a.     On June 25, 2021, counsel for Plaintiffs provided AIIC with a statutory

15  demand for settlement made by Raddy within policy limits that expired on July 16, 2021.

16  Plaintiffs' counsel demanded that AIIC timely agree to respond to the policy limit demand by

17  tendering the full policy limits available for settlement of all claims.  AIIC failed to respond to the

18  policy demand and did not extend any settlement authority.

19        b.     Having received no response from AIIC to the request for settlement within

20  limits, counsel for Plaintiffs obtained an extension from Raddy's through July 30, 2021 to respond

21  to the demand and communicated this extension to AIIC on June 30, 2021.

22        c.     Between June 30, 2021 and August 18, 2021, counsel made repeated

23  attempts to reach AIIC's appointed claims handler by phone and through emails without any

24  response or correspondence whatsoever.  AIIC failed to respond to the policy demand and did not

25  extend any settlement authority.

26        d.     On September 5, 2021, counsel for Plaintiffs again attempted to

27  communicate with AIIC without success, causing Plaintiffs to reasonably conclude that AIIC

28  had abandoned the defense and had abandoned its legal duties towards its insureds.

SKY-001 | Skyan Mtn to Post Bond (Decl Youngerman) 010322.sy rev      -3-

e.      On October 8, 2021, in light of the abandonment of the defense by AIIC, Plaintiffs substituted new counsel to represent them in the Raddy action, with substitutions of attorney filed substituting me out of the case and substituting Feldman & Associates to assume control of the defense.

10.      During the time in which I represented Plaintiffs in the Raddy action, my firm experienced significant delay and difficulties in receiving payment for the services rendered in connection with the defense. AIIC repeatedly ignored and refused to pay invoices for reasonably incurred defense fees and expenses. At or about the time I substituted out as counsel of record, the consultants who had been retained by Plaintiffs had not received payment from AIIC for their services rendered and Plaintiffs were at risk of losing the services from these retained consultants. In light of AIIC's abandonment and failure to communicate with SKYAN, YANG or counsel and, in order to avoid further damage and prejudice to SKYAN and YANG, on October 4, 2021, Plaintiff SKYAN HOLDINGS, LLC issued checks to the retained consultants to bring their accounts current.

11.      The Raddy Complaint seeks damages of at least $1,700,000. Plaintiffs dispute the substance of the Raddy Complaint, including that Raddy was damaged in any amount. Based on my experience, it is not unreasonable to estimate that the total fees and costs to defend SKYAN through trial of the Raddy Complaint could exceed $300,000. Although Plaintiffs dispute liability and deny all substantive claims in the Raddy Complaint, if liability is found, Plaintiffs' exposure could be in excess of the policy limits of the AIIC Policy.

DECLARATION OF STEPHEN YOUNGERMAN IN SUPPORT OF PLAINTIFFS' MOTION THAT DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND

1    I declare under penalty of perjury, under the laws of the state of California, that the

2  foregoing is true and correct.

3    Executed this 3rd day of January, 2022, at Santa Monica, California.

4

5  By:

   Stephen Youngerman, Esq.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEPHEN YOUNGERMAN IN SUPPORT OF PLAINTIFFS' MOTION THAT
DEFENDANT ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. POST A BOND